515 So.2d 1046 (1987)
Earl McCONNEHEAD, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-2376.
District Court of Appeal of Florida, Fourth District.
November 12, 1987.
Rehearing Denied December 11, 1987.
Eric M. Cohen of Blumenfeld & Cohen, Coral Gables, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Lee Rosenthal, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Appellant was indicted for the murder in the first degree of Phillip Coffman, and attempted robbery. His sworn motion to dismiss the attempted robbery count was denied.
He was tried to a jury and his motions for judgment of acquittal on both counts at the close of the state's case and at the close of all the evidence were denied. The jury found him guilty on both counts; the trial court sentenced him to life imprisonment with no possibility of parole for twenty-five years on the murder count and to two years in prison on the attempted robbery count. We affirm the conviction and sentence for murder, but reverse the conviction and sentence for attempted robbery.
The victim, Phillip Coffman, and Bruce Johnson were roommates. They had been to the beach and had drunk four or five beers each earlier on the day of the murder, according to the testimony of Johnson. When they returned home, Coffman showered while Johnson ironed his clothing. Johnson's wallet was under the table on which he did the ironing. Coffman dressed and went out. He returned in about ten minutes with a six-pack of beer.
Johnson was in the shower when he heard Coffman screaming for help. Johnson ran out to the front room, but saw nothing until he reached the door. There he could see Coffman and McConnehead struggling over a dark object the nature of which he could not make out. The parties stipulate it was a gun. Coffman yelled, *1047 "Get him," and Johnson ran up and hit both of them, pushing them against the outside wall of the apartment.
As Johnson careened off to the left, appellant pulled Coffman out into the parking lot. When he regained his footing, Johnson raced after them and tackled them both. Johnson grabbed them both and all fell down in a heap. Johnson and appellant both got up at the same time, but Coffman remained on his knees. Johnson punched appellant in the forehead. This pushed him back about five feet.
Coffman and Johnson chased after the appellant, Johnson grabbing appellant's shirt just as Johnson tripped over a curb. Johnson let go of the shirt as he fell. Coffman kept chasing appellant. Johnson saw appellant turn around, heard Coffman say, "Oh my God," and saw Coffman duck. A shot went off. Johnson had not previously seen the gun. Coffman fell to the ground, grabbing for his own neck. Appellant pointed the gun at Johnson, and Johnson hid behind a wall. Appellant then ran across the street, and Johnson ran to Coffman's aid. After the police arrived and Johnson gave them a description of the assailant, and when Johnson was in the back of the ambulance that was carrying Coffman, the medical aide pointed out the wallet. It was on the ground in the parking lot at the place where Johnson had punched appellant. The wallet contained $11.00.
In his statement, appellant stated he and Coffman were still struggling with each other when the gun went off. Appellant said he was not sure whether his finger was on the trigger when the gun went off. Appellant also told Officer Rice a conflicting story that Coffman did not have hold of the gun when it was discharged, and that he had started to throw the gun away but changed his mind because he was afraid Coffman and Johnson would get it.
Medical examiner Larry Tate testified that the wound that was the cause of Coffman's death was a contact wound. There was some sooting around the margin where the bullet had entered, and some searing of the wound and a nearby skin area. He could not state with a reasonable degree of medical certainty the positions of the appellant and the victim at the time of the firing. Johnson testified that Coffman was "about even" when appellant turned and shot. He also said that Coffman was three to six feet away from appellant when the shot went off; that the lighting was not good; and that he saw the flash out of the muzzle and the silhouette of the gun barrel.
There was one bag of marijuana in the apartment shared by Johnson and Coffman. Appellant claimed he had gone to their apartment to sell a small amount of marijuana. Appellant admitted the gun was his. Johnson said he never knew Coffman to buy any marijuana; Johnson shared his marijuana with Coffman. The marijuana in the apartment was Johnson's, according to him.
There are two points on appeal. The first point is whether the trial court erred in denying appellant's motion for judgment of acquittal as to the murder count both at the close of the state's case and at the close of all the evidence, inasmuch as there was insufficient proof of both the underlying offense of attempted robbery and of premeditation for the count to go to the jury. We conclude the felony murder theory failed but there was adequate evidence on which it could be determined that appellant premeditated the fatal shooting.
The second point is whether the trial court erred in denying the appellant's motions for judgment of acquittal as to the attempted robbery count, inasmuch as there was insufficient evidence to send this question to the jury. We conclude there was sufficient evidence to support a judgment of guilty of petit larceny, but the element of force or threat of force was not shown.

I.

DENIAL OF MOTION FOR JUDGMENT OF ACQUITTAL ON MURDER COUNT
Appellant urges that the evidence is largely circumstantial, and that inasmuch as the evidence is equally consistent with *1048 an hypothesis of innocence as of guilt, the motion for judgment of acquittal should have been granted. Appellant contends there was insufficient evidence to support either the theory that the homicide occurred while appellant was attempting to commit a robbery, or the theory that the death occurred on appellant's premeditated design. The state was apparently traveling on both of these theories.
In moving for judgment of acquittal, appellant admits all of the facts introduced in evidence, and every fair and reasonable inference must be drawn in favor of the state. E.g., Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). Spinkellink also states that premeditation, like other factual circumstances, may be established by circumstantial evidence. Id.; accord Sireci v. State, 399 So.2d 964 (Fla. 1981). Quoting Larry v. State, 104 So.2d 352, 354 (Fla. 1958), the Florida Supreme Court stated that premeditation may be inferred from the nature of the weapon used, the presence or absence of adequate provocation, previous difficulty between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds. 313 So.2d at 670. There is no particular minimum amount of time required for there to be premeditation; there need only be enough time to permit reflection, and this may be only a few moments. See Dobbert v. Strickland, 532 F. Supp. 545 (M.D.Fla. 1982). In our judgment the above facts were sufficient to establish premeditation. Accordingly, we reject appellant's conclusion that the conviction for the homicide should be reversed and remanded with direction to enter judgment and sentence for third degree murder or manslaughter.

II.

ATTEMPTED ROBBERY
Appellant's second point on appeal is that the evidence supporting the count of attempted robbery was so insufficient that the motion for judgment of acquittal should have been granted as to this count. If this is correct, it also means that the felony murder theory must go by the boards; but if, as we conclude, the premeditated murder theory stands up, the latter is of no moment as to the conviction for murder.
The statute defines robbery as the taking of money or other property which may be the subject of larceny from the person or custody of another by force, violence, assault or putting in fear. § 812.13(1), Fla. Stat. (1985). The supreme court said in Royal v. State, 490 So.2d 44 (Fla. 1986), that the statute had not changed the definition of robbery from its common law definition, and that violence or intimidation must precede or be contemporaneous with the taking of the property for there to be a robbery; otherwise there would be no distinction between theft and robbery. The supreme court would not accept the reasoning that because the expression "in the course of committing the robbery" is used in section 812.13(3), where punishments are distinguished according to the type of force used to perpetrate the robbery, there had been a change in the definition of the crime.
Appellant's most cogent argument respecting the crime of attempted robbery is that there is neither direct nor circumstantial evidence to support the conclusion that  if, indeed, appellant took the wallet  he used force or threat of force to obtain it. We agree.
The state correctly argues that because of the obvious untruths contained in some of appellant's statements, and the conflict between his facts and those of the eyewitness, there is no need to accept appellant's version of what happened. It is, however, a long leap from not believing that appellant was at the victim's apartment to sell him a small amount of marijuana to the conclusion that the appellant used force or threat of force to take or attempt to take Johnson's wallet.
Finally, inasmuch as the parties agree that the struggle between Coffman and appellant was over the gun, we do not think there was sufficient evidence to put even the lesser included offense of petty *1049 theft before the jury. It is as likely that the wallet, found in the parking lot where Coffman and appellant had been struggling on the ground, had been in Coffman's, as in appellant's possession.
GLICKSTEIN, DELL and GUNTHER, JJ., concur.